1  LESTER J. MARSTON – California SBN 081030
   RAPPORT AND MARSTON
2  405 West Perkins Street
   Ukiah, CA 95482
3  Telephone: 707-462-6846
   Facsimile:  707-462-4235
4  e-mail: marston1@pacbell.net

5  Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>YOSEMITE BANK, a division of PREMIER VALLEY BANK, a domestic stock corporation and State-chartered banking institution; UNITED SECURITY BANK, a wholly owned subsidiary of United Security Bancshares; REGGIE LEWIS, as Tribal Council Vice Chairperson, in his individual capacity; CHANCE ALBERTA, as Tribal Council Member-at-large, in his individual capacity and CARL BUSHMAN, as Tribal Council Member-at-Large, in his individual capacity.<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONEY DAMAGES** |

{JEM/00025188. }

# INTRODUCTION

1.   This is an action brought by the Picayune Rancheria of Chukchansi Indians ("Tribe"), a federally recognized Indian Tribe, against Yosemite Bank ("Yosemite"), a division of Premier Valley Bank, a domestic stock corporation and State-chartered banking association, and United Security Bank ("USB") which is the wholly-owned subsidiary of United Security Bancshares (collectively the "Banks"), and Chance Alberta, Carl Bushman, and Reggie Lewis (collectively the "Lewis Group"), members of the Tribe's Tribal Council, for declaratory and injunctive relief and for an order preventing the release of Tribal funds from the Tribe's bank accounts ("Accounts") maintained at the Banks to any parties. The Tribe seeks an order directing the Banks to freeze the Accounts until the dispute between the parties can be resolved in the Picayune Rancheria Tribal Court ("Tribal Court"). The Tribe also seeks an order from this Court recognizing and enforcing the provisional and preliminary orders rendered by the Tribal Court, against USB and the Lewis Group determining that the legitimate governing body of the Tribe is the Tribe's seven (7) person Tribal Council consisting of Nancy Ayala, Reggie Lewis, Karen Wynn, Tracey Brechbuehl, Chance Alberta, Carl Bushman, and Charlie Sargosa, ("Tribal Council"). Finally, the Tribe seeks an order from this Court requiring the Banks to interplead the funds in the accounts with the Court until the Court can enter a final judgment in this case.

2.   The Tribe filed suit against the Banks in Tribal Court for breach of contract for refusing to release to the Tribal Council funds maintained in the Tribe's Accounts. The Tribe sought and obtained a temporary restraining order and then a preliminary injunction from the Tribal Court: (1) directing the USB Bank to interplead the funds in the Accounts with the Tribal Court; (2) prohibiting any withdrawal of the funds from the Accounts except by order of the Court, and (3) establishing a procedure for withdrawal of the funds to pay the legitimate operating expenses of the Tribal government. The Tribe has filed suit against Yosemite in the Tribal Court and will be moving for a temporary restraining order requesting that the Tribal Court grant it the same provisional relief awarded the Tribe in the USB Tribal Court action. Finally, Tribe seeks to have this Court recognize and enforce the orders issued by the Tribal Court pursuant to the

doctrine of comity until such time as the defendants have exhausted their tribal court remedies as required by *National Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985).

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the Tribe's claims arise under the Constitution, laws, and treaties of the United States, and 28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe and the Tribe's claims arise under the Constitution, laws, or treaties of the United States.

## VENUE

4.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that the defendants all reside in this District, the Tribe's claims arose within this District, and the property that is the subject of this action was generated and is located within this District.

## PARTIES

5.  The Tribe is a federally recognized Indian tribe, recognized by the Secretary of the United States Department of the Interior as maintaining a government-to-government relationship with the Tribe.

6.  Yosemite is a division of Premier Valley Bank, a domestic stock organization organized and existing as a state-chartered banking association chartered by the comptroller of currency under the laws of the United States. Its principal place of business is 255 East River Park Circle, Suite 180, Fresno, California 93720. Yosemite is sued in its independent corporate capacity.

7.  USB is a wholly-owned subsidiary of United Security Bancshares and is an active California state-chartered independent community bank. Its principal place of business is 2126 Inyo Street, Fresno, California 93721. USB is sued in its independent corporate capacity.

8.  Defendants Chance Alberta ("Alberta"); Carl Bushman ("Bushman") and Reggie Lewis ("Lewis") are each enrolled members of the Tribe and members of the Tribe's seven (7) member Tribal Council.

# GENERAL ALLEGATIONS

9. The Tribe is organized under a written constitution ("Constitution") which designates the Picayune Tribal Council as the governing body of the Tribe. A copy of the Tribe's Constitution is hereby incorporated by this reference and attached hereto as **Exhibit A**.

10. Under Article IV, Section 2 of the Constitution, the Tribal Council is composed of seven persons who are elected by the eligible voting members of the Tribe. Under Article VI, Section 2, of the Tribe's Constitution, a quorum of the Tribal Council consists of four members, and no business of the Tribal Council shall be transacted unless a quorum is present. Under the Tribe's Constitution, the Tribal Council can only transact business at a regular or special meeting of the Tribal Council.

11. Pursuant to the Article V, subsections (m) and (q) of the Tribe's Constitution, the Tribal Council adopted a Corporation Ordinance establishing the Chukchansi Economic Development Authority ("CEDA") for the purpose of engaging in economic development projects for the Tribe. The CEDA is governed by a seven (7) member board of directors ("Board") that consists of the members of the Tribal Council.

12. On March 5, 2013, by Resolution No. 2013-55 ("Resolution"), the Tribal Council, in accordance with Article V, subsections (m) and (q), of the Tribe's Constitution, amended its Corporations Ordinance to add Section 6.10.6 to provide for an emergency replacement of the Board of CEDA. The Resolution was passed by a majority of the Tribal Council with a quorum of the Tribal Council members presents at a duly commenced meeting of the Tribal Council. A copy of Resolution No. 2013-55 is hereby incorporated by this reference attached hereto as **Exhibit B**.

13. Also on March 5, 2013, by Resolution No. 2013-56, the Tribal Council appointed Nancy Ayala, Karen Wynn, Tracey Brechbuehl, and Charles Sargosa, as members of the Tribal Council, to the Board of CEDA, duly invested with all powers to govern CEDA. A copy of Resolution No. 2013-56 is hereby incorporated by this reference attached hereto as **Exhibit C**.

14. Based upon the Resolution, the members of the Tribal Council and the CEDA Board, were Nancy Ayala, Tracy Brechbuehl, Karen Wynn, Charles Sargosa, Reggie Lewis, Carl "Buzz" Bushman, and Chance Alberta.

15. The Tribe is the owner and operator of a destination resort and casino ("Casino") consisting of, among other things, a 400 room hotel and a gaming facility consisting of approximately 1,800 slot machines, 23 table games, and a variety of restaurants and entertainment venues. The Tribe operates the Casino under the fictitious business name of "Chukchansi Gold Resort and Casino." The Casino employs approximately 1,200 people, both tribal members and non-members.

16. The Casino is the Tribe's principal source of revenue with which to perform essential tribal governmental functions, programs, and services, and to accomplish tribal objectives, including, but not limited to, providing tribal members with employment and the income necessary to maintain a viable, self-sufficient tribal community.

17. Lacking the capital with which to construct and operate the Casino, the Tribe sought and obtained a loan ("Loan") in the approximate amount of $240 Million. The loan is secured by an indenture. Under the repayment terms of the note and indenture executed by the Tribe in connection with the Loan, the Tribe is obligated to make bi-yearly payments to the Wells Fargo Bank on behalf of the lenders or bond holders in the approximate amount of $28 Million. The payments are made through bank accounts maintained at the Rabobank, in Fresno, California. The accounts with Rabobank are controlled by a Deposit Account Control Agreement that authorizes the Casino to make a monthly $1 Million payment to the Tribe for the operation of its Tribal Government.

18. In order to operate the Tribe's tribal government, the Tribe entered into an agreement ("Agreement") with USB. Under the terms of the Agreement, the Tribe maintains a variety of accounts, including, but not limited to, account numbers 4288726 (General Account); 4288734 (Grants Accounts); 4288742 (PowWow Account); 4288750 (Pay Roll Account); and 4289005 (Benefits Account), ("USB Accounts"), with USB. Pursuant to the Agreement, the Tribe

deposits the Tribe's monthly $1 Million payment, generated from the operation of the Casino, into the USB Accounts. From the USB Accounts, the Tribe pays the operating expenses of the Tribe's tribal government and other economic development projects. Under the Tribe's Agreement with USB, USB agreed to pay any check or warrant executed by persons authorized by the Tribal Council or the Tribal Council sitting as the CEDA Board, to sign checks. USB further agreed that the Tribal Council has the authority to designate who the check signers are on the USB Accounts. From the USB Accounts, the Tribe pays the operating expenses and other obligations of the various businesses maintained by the tribal government for the benefit of its members, and pays its obligations incurred to vendors who contract with those businesses. Under the Tribe's Agreement with USB, USB has agreed to pay any check or warrant that has been executed by any check signers authorized to sign checks by the Tribal Council. In addition, USB has agreed that the Tribal Council has the authority to designate who the check signers are on the USB Accounts.

19. Pursuant to the authority granted to it under Article V, subsections (m) and (q) of the Constitution, the Tribal Council has chartered and created "Chukchansi Incorporated" ("Corporation") a tribal corporation created for the purpose of operating various business of the Tribe.

20. In order to operate the Corporation, the Tribe entered into an agreement ("Contract") with Yosemite. Under the terms of that Contract, the Tribe maintains a variety of checking accounts, including, but not limited to, account numbers 503001703, 503001281 and 503001299 (Yosemite Lumber general and sales tax accounts), 503001273 (Yosemite Lumber credit card account), 503001166 (Chukchansi Incorporated), 503001564 (Mighty Builders, Inc.), 503001455 (Tiny Acorn), 503001679 (Chukchansi Distribution, Inc.) and 503001562 (Willow Glen Smoke Shop Incorporated) (collectively, "Yosemite Accounts"), with Yosemite. From the Yosemite Accounts, the Corporation pays the operating expenses and other obligations of the various businesses operated by the Corporation, and pays obligations incurred to vendors who contract with those businesses. Under the Tribe's Contract with Yosemite, Yosemite also has

agreed to pay any check or warrant that has been executed by any check signers authorized to sign checks by the Board of Directors of the Corporation, appointed by the Tribal Council. In addition, Yosemite has agreed that the Tribal Council has the authority to designate who the check signers are on the Yosemite Accounts.

21. Between January 24, 2013, and February 24, 2013, a dispute ("Dispute") arose between members of the Tribal Council. Motions were allegedly passed by subgroups of the Tribal Council suspending and reinstating various Tribal Council members during this period.

22. None of the suspensions of the members of the Tribal Council arising from the Dispute were valid because they were not done in accordance with the Tribe's Constitution, By-Laws, and Ethics Ordinance. A copy of the Tribe's By-Laws and Ethics Ordinance are hereby incorporated by this reference and attached hereto as **Exhibits D** and **E**, respectively.

23. As a result of the Dispute, the Tribal Council divided into two factions, one consisting of a majority of the Tribal Council which included Nancy Ayala, Tracey Brechbuehl, Karen Wynn, and Charles Sargosa ("Ayala Faction"), and a second minority faction consisting of Reggie Lewis, Chance Alberta, and Carl Bushman ("Lewis Faction").

24. Article VI, Section 2 of the Tribe's Constitution provides that four Tribal Council members constitute a quorum of the Tribe's Tribal Council and that the Tribal Council can only conduct business where a quorum is present. Only the Ayala Faction can establish a quorum of the Tribal Council.

25. The Lewis Faction, consisting of three Tribal Council members, never constituted a quorum of the Tribal Council as required under the Tribe's Constitution with the authority to transact any business on behalf of the Tribe, CEDA or the Corporation.

26. On or about February 28, 2013, the the Lewis Faction stated to officials of the Banks that it had the authority to withdraw funds from the USB Accounts and Yosemite Accounts (Collectively, the "Accounts"), including the authority to designate which check signers were authorized to withdraw funds from the Accounts. The Tribal Council maintained that the Lewis Faction had no such authority.

{JEM/00025188. }                                    -6-
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND MONEY DAMAGES
Case No. 39-2009-00231065-CU-WM-STK

27. On or about March 4, 2013, the Ayala Faction provided the Banks with documents showing that the Tribal Council still consisted of all seven members of the Tribal Council, and that the Lewis Faction had no authority to withdraw funds from the Accounts or designate check signers for the Accounts.

28. On or about March 6, 2013, the Banks breached their Agreements with the Tribe by refusing to recognize the Tribal Council, as a whole, as the duly constituted and governing body of the Tribe with the authority to withdraw funds from the Accounts and to designate check signers for the Accounts.

29. On March 15, 2013, at a duly noticed special meeting of the Tribal Council, with a quorum of the Tribal Council present, a majority of the Tribal Council voted to file suit against the USB in the Picayune Rancheria of Chukchansi Indians Tribal Court and seek an order against USB to prevent it from allowing the Lewis Faction to withdraw funds from the USB Accounts and to require USB to interplead the funds in the USB Accounts with the Tribal Court, pending the resolution of Tribal Court litigation ("Tribal Court Action").

30. At the same March 15, 2013 special meeting, the majority of the Tribal Council voted to suspend Lewis, Alberta, and Bushman from the Tribal Council, based on written allegations made by Ayala, Brechbuehl, Wynn and Sargosa of a number of violations of the Constitution and Ethics Oridinance.

31. On March 15, 2013, legal counsel for the Tribal Council notified USB's legal counsel and counsel for the Lewis Faction that the Tribal Council had filed a complaint against USB for breach of contract and for interpleader, and would be seeking a temporary restraining order directing USB to interplead the money in the USB Accounts with the Tribal Court. Counsel for the Tribal Council provided USB's legal counsel and counsel for the Lewis Faction with a copy of the complaint, and all relevant pleadings in support of the motion for a temporary restraining order. The Tribal Council's legal counsel also informed counsel for USB that the Tribal Court would hold a hearing on the motion later that afternoon, and provided a telephone

conference call in number and access code to USB's legal counsel so that USB's legal counsel could appear and participate in the hearing on the motion by telephone.

32. On March 15, 2013, the Tribal Court held a hearing on the Tribe's motion for a temporary restraining order and issued an order directing USB to interplead the money in the Accounts with the Tribal Court. Neither legal counsel for USB or the Lewis Faction appeared at the hearing and did not file any written opposition to the Tribe's motion.

33. At the conclusion of the hearing, the Tribal Court issued a temporary restraining order prohibiting USB from allowing any person, other than a person or persons designated by the Tribal Council, from withdrawing any money from the Accounts and ordering USB to interplead the money in the Accounts with the Tribal Court ("TRO Order"). A true and correct copy of the Court's March 15, 2013, TRO Order is hereby incorporated by this reference and attached hereto as **Exhibit F**.

34. On or about March 17, 2013, Lewis, Alberta and Bushman were each served with a notice of suspension from the Tribal Council pending a hearing on whether they should be removed from office.

35. On March 18, 2013, counsel for the Tribe served the TRO Order on counsel for USB and the Lewis Faction by mail and email.

36. The TRO Order also set a hearing for March 22, 2013, at 10:00 a.m., PST, on the Tribe's motion for preliminary injunction. On Friday, March 29, 2013, the Tribal Court held a hearing on the Tribe's motion for a preliminary injunction. At the hearing, counsel for the Tribe appeared in person at the Tribal Court on the Picayune Rancheria, counsel for USB did not appear at the hearing, and no one appeared on behalf of Lewis, Alberta, or Bushman.

37. On May 23, 2013, a hearing was held on the question of whether Lewis, Alberta, and Bushman should be removed from the Tribal Council. Based on the evidence submitted at the hearing, the Tribal Council voted to remove Lewis, Alberta, and Bushman from the Council.

38. Following the hearing, on March 29, 2013, the Tribal Court entered an order ("Injunction") granting the Tribe's motion for a preliminary injunction. A true and correct copy

of the March 29, 2013, Injunction is attached hereto as **Exhibit G.** The TRO Order and Injunction shall hereinafter be referred to collectively as the "Orders." The defendants and each of them refused to comply with the Orders issued by the Tribal Court.

39. On or about May 16, 2013, the Banks by letter dated May 16, 2013, recognized the Lewis Faction, which cannot establish a quorum of the Tribal Council, as having the authority to withdraw money from the Accounts and designate check signers for the Accounts. A copy of the Banks' May 16, 2013 letters are hereby incorporated by this reference and attached hereto respectively as **Exhibit H and I**.

40. The Tribe seeks recognition and enforcement of the Orders entered by the Tribal Court in the Tribal Court Action with which the defendants refuse to comply to make sure the Tribal government's and the Corporation's operating expenses are paid.

## FIRST CAUSE OF ACTION

### Declaratory Relief Regarding the Recognition of the Tribal Court's Orders

41. The Tribe realleges each of the allegations set forth in Paragraphs 1 through 40 above, and by this reference incorporates those allegations herein as if set forth in full.

42. Pursuant to the doctrine of comity, federal courts are obligated to recognize and enforce tribal court judgments as long as: (1) the tribal court had personal jurisdiction over the parties; (2) the tribal court had subject matter jurisdiction over the claims; and (3) the parties were provided with due process.

43. The Tribal Court had personal jurisdiction over USB in that, at all times relevant to the events that were the basis for the issuance of all Orders issued or entered by the Tribal Court in the Tribal Court Action, USB was in a voluntary contractual relationship with the Tribe that was entered into on tribal trust land relating to the Tribe's Tribal governmental funds. All Tribal funds are generated on the Tribe's Picayune Rancheria ("Reservation") trust land by the Tribe's Casino and Corporation, which is wholly owned and operated by the Tribe. The money is essential to the functioning of the Tribe's government, Corporation, and the Casino. USB's conduct, therefore, threatens the political integrity, economic security, and welfare of the Tribe.

The Tribal Court had personal jurisdiction over the Individual defendants in that all three defendants are members of the Tribe who were personally served with a copy of the Tribal Court summons and Tribal Court Complaint.

44. The Tribal Court had subject matter jurisdiction over the claims raised by the Tribe pursuant to the Law and Order Code of the Tribe, Title I, Chapter 1, Sections 1-2-1 through 1-2-7, in that the Tribe pled a cause of action against USB for breach of contract entered into on the Reservation, interpleader of the Tribe's funds maintained at USB and pled a cause of action against the Individual defendants for interfering with the ability of the Tribe to govern itself.

45. USB and the Individual defendants were provided with due process of law throughout the Tribal Court Action. The Tribal Court conducted all of the proceedings before it pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence which have been adopted by the Tribal Council for the operation of the Tribal Court. During the Tribal Court proceedings, USB and the Individual defendants were provided with notice and the opportunity to be heard. Legal counsel for USB and the Individual defendants were given notice of and an opportunity to participate in all of the hearing conducted by the Tribal Court. USB and the Individual defendants voluntarily did not participate in the hearing on the Tribe's motion for a temporary restraining order, and preliminary injunction. USB and the Individual defendants did not submit any evidence or argument to the Tribal Court in opposition to the Tribe's motion for a temporary restraining order and preliminary injunction that ordered USB to interplead the money in the USB Accounts with the Tribal Court

46. The Tribal Court's Orders are entitled to comity, recognition, and enforcement by this Court.

## SECOND CAUSE OF ACTION

### Injunctive Relief Regarding the Enforcement of the Tribal Court's Orders

47. The Tribe realleges each of the allegations set forth in Paragraphs 1 through 47 above, and by this reference incorporates those allegations herein as if set forth in full.

48. The defendants have been served with copies of the Tribal Court's Orders entered against USB and the Individual defendants in the Tribal Court action.

49. Counsel for the Tribe has demanded that all of the defendants comply with the Tribal Court's Orders recognizing the seven (7) person Tribal Council and its authority to designate check signers for both the USB and Yosemite Accounts.

50. Despite the Tribe's demand, all of the defendants have refused to recognize the Tribal Court's Orders or comply with the Tribe's demand.

51. Instead, both USB and Yosemite have recognized the Lewis Faction as having the authority to designate check signers for the Accounts and to make deposits in and withdraw funds from the Accounts.

52. Unless all the defendants are preliminarily and permanently restrained and enjoined from complying with the Orders of the Tribal Court by allowing the Lewis Faction to designate check signers on the Accounts or make deposits in or withdraw money out of the Accounts. The Tribe will suffer severe and irreparable harm for which it has no adequate remedy at law in that the Tribal Government and Corporation will not have access to the checking accounts that they need to pay the operating expenses of the Tribe and Corporation, including the Tribe's employees, and the ability of the Tribal government to operate as a government will cease and the Tribe will continue to exist in name only.

53. An actual controversy exists between the Tribe, and all the defendants in that the Tribe contends that the defendants have an obligation to comply with the Tribal Court's Orders and all orders and any judgment entered by the Tribal Court in the Tribal Court Action, while the defendants contend that they do not.

54. The Tribal Court's Orders and all orders and any judgment issued or entered by the Tribal Court in the Tribal Court Action are entitled to comity, recognition, and enforcement by this Court.

## THIRD CAUSE OF ACTION

### Declaratory Relief for Interference With Tribal Self-Government

55. The Tribe realleges each of the allegations contained in Paragraphs 1 through 54 above, and hereby incorporates by this reference all such allegations as if set forth herein in full.

56. Article V of the Tribe's Constitution vests in the Tribal Council the exclusive authority to govern the Tribe and to make all decisions pertaining to the operation of the Tribe's Tribal government, and business enterprises, including, but not limited to, the Corporation and its subsidiaries.

57. By recognizing the Lewis Faction as the "legitimate" Tribal Council, Yosemite and USB have violated the Tribe's Constitution and other applicable Tribal laws and have directly interfered with the ability of the Tribe to govern itself.

58. Unless the Banks are provisionally restrained and enjoined from directly interfering in the operations of the Tribal government, the Tribe will suffer severe irreparable injury in that the Tribe will be deprived of its right to govern itself and determine for itself who will make decisions pertaining to the operation of the Tribe's government and business enterprises, including the Corporation.

59. An actual controversy exists between the Tribe and the defendants in that the Tribe contends that the Banks' actions are directly interfering with the Tribe's ability to govern itself while the defendants contend they do not.

## FOURTH CAUSE OF ACTION

### Injunctive Relief against the Bank for the Interpleader

60. The Tribe alleges each of the allegations set forth in Paragraph 1-60 above and hereby incorporates by their reference all such allegations as if set forth here in full.

61. The Tribe and the Lewis Faction both claim to be entitled to the funds in the Accounts on deposit with USB and Yosemite Banks. The Banks have breached their agreements with the Tribe by recognizing the Lewis Faction instead of the seven (7) members of the Tribal

Council as the governing body of the Tribe with the authority to designate the check signers on the Accounts and to make deposits in and withdraw money from the Accounts.

62. Unless the Banks are provisionally and permanently restrained and enjoined from interpleading all funds in the Accounts at USB and Yosemite with this Court, the Tribe will suffer severe and irreparable harm for which it has no adequate remedy at law in that the funds, that cannot be replaced, will be made available to the Lewis Faction for withdrawal and expenditure.

63. An actual controversy exists between the Tribe and the Banks in that the Tribe contends that interpleading of the funds in order to preserve the funds in the Account until the Court enters a final judgment in this case is necessary while the Banks contends that preservation of the funds is not necessary.

WHEREFORE, the Tribe prays that judgment be entered against the defendants as follows:

1. For an order recognizing the Tribal Court's temporary restraining order and preliminary injunction;

2. For an order requiring USB to comply with the temporary restraining order and preliminary injunction issued or entered by the Tribal Court in the Tribal Court Action until USB has exhausted its Tribal Court remedies;

3. For an order requiring USB and Yosemite to interplead the money remaining in the Tribe's USB and Yosemite Bank Accounts with this Court;

4. For an order requiring the individual defendants to comply with the temporary restraining order and preliminary injunction issued or entered by the Tribal Court in the Tribal Court Action until the individual defendants have exhausted their Tribal Court remedies;

5. That the Court declare and enter a judgment declaring that Defendant Banks breached their agreements with the Tribe, including interfering with the Tribe's ability to govern itself by recognizing the Lewis Faction;

6. That the Court enter orders and a judgment provisionally, preliminarily and permanently enjoining the Banks and their officers, employees and agents from preventing the

Tribe from designating the check signers on the Accounts and making deposits in or withdrawing funds from the Accounts;

    7. That the Court award the Tribe its court costs and reasonable attorney fees; and

    8. That the Court grant such other and further relief as may be deemed appropriate.

Dated: May 30, 2013                       RAPPORT AND MARSTON

                                                By: */s/ Lester J. Marston*
                                                      Lester J. Marston
                                                      Attorney for the Tribe

CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2013, I electronically filed the foregoing with the Clerk of the Court for the U.S. District for the Eastern District of California, by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Lester J. Marston*
LESTER J. MARSTON,
Attorney for the Plaintiffs