# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>YOSEMITE BANK, et al.,<br><br>Defendants. | Case No. 1:13-cv-0831-LJO-MJS<br><br>**FINDINGS AND RECOMMENDATIONS DENYING THE REID COUNCIL'S MOTION TO INTERVENE**<br><br>**ECF No. 10**<br><br>**OBJECTIONS DUE WITHIN FIFTEEN DAYS** |

## I. INTRODUCTION

This action was initiated in the name of the Picayune Rancheria of Chukchansi Indians (the "Tribe"), a federally recognized Indian Tribe. The Tribe, through its business arm, the Chukchansi Economic Development Authority ("CEDA") operates a casino and resort. The Tribe and CEDA have contractual arrangements with Defendants Yosemite Bank, a division of Premier Valley Bank, and United Security Bank, a wholly owned subsidiary of United Security Bancshares, (collectively "Defendant Banks") under which the former entities deposit revenues generated by the casino and resort and in return Defendant Banks disburse those revenues in accordance with the parties' agreements (the specific terms of which are not relevant to

resolution of this motion).

There is a history of dispute between various groups, or factions, within the Tribe as to which legitimately controls the tribal government and its related entities, activities, and revenues. Reportedly, a "Lewis/Ayala Faction", made up of a then-existing association of members of two other tribal factions, served as the properly elected majority of the governing body of the Tribe (its "Tribal Council") up until December 3, 2011. Proposed interveners, the "Picayune Rancheria of the Chukchansi Indians (Reid Council)" (hereinafter referred to as the "Reid Faction") claim that on that date, they were properly elected to the majority of the governing body in what remains the most recent valid tribal election held in accordance with tribal law.

However, according to the Reid Faction, the Lewis/Ayala Faction refused to recognize the election results or cede power to the Reid Faction and, instead, through the use of force, sham elections, and a variety of criminal acts, prevented the Reid Faction from assuming its seats on the Tribal Council and from taking control of tribal government and business. The Reid Faction filings do not reflect how it responded to this alleged usurpation beyond unsuccessfully challenging recognition of the Lewis/Ayala Faction by the Bureau of Indian Affairs and by private entities doing business with the tribe. It acknowledges that the Lewis/Ayala Faction maintained control of the Tribal Council, tribal government, and tribal business throughout the 2012 calendar year and into 2013. There is nothing before the Court to suggest that the Reid Faction has participated in tribal government, participated in tribal business, or been recognized by anyone as representing the Tribe or its Tribal Council at any time subsequent to December 3, 2011.

The next major event in this tribal feud reportedly occurred on or about February 21, 2013, when the Ayala Faction, acting without and in opposition to its previous partner, the Lewis Faction, asserted exclusive control of the Tribal Council. The Lewis Faction (led by the individually named Defendants in this case) asserts that the actions taken on February 21, 2013, were unauthorized under tribal law and designed to reduce

the members of the Tribe from some 900 Lewis Faction associates to 46 blood relatives of Ayala Faction members.  The competing factions have made conflicting representations to Defendant Banks as to who is authorized to represent the Tribe and CEDA in dealing with the bank and who is authorized to withdraw and use funds from the bank.

In the course of these disputes, the Ayala Faction's new Tribal Council undertook to convene a Picayune Rancheria Tribal Court and there obtain injunctive relief directing Defendant Banks to comply with the Ayala Faction's Tribal Court orders regarding management, control, and disbursement of the deposited funds.  Defendant Banks reportedly have refused to recognize the authority of the Ayala Faction Tribal Council or comply with the Ayala Faction's demands or Tribal Court's orders.  Apparently, they have continued to recognize the validity and authority of the Lewis Faction.

Thus, on the surface, the primary objectives of this action are to obtain this Court's order compelling Defendant Banks to comply with Ayala Faction Tribal Court orders.  However, the Lewis Faction and now the Reid Faction have moved to intervene as a matter of right or permissively on the grounds that significant, protectable interests central to the Tribe, its government, and its business are at issue in this case and none of the existing parties can adequately represent the interests of the Tribe.  The moving papers allege that the Ayala Faction improperly and without authority filed the Complaint in the Tribe's name seeking to compel recognition, comity, and enforcement of purported decisions made by an unauthorized, illegally formed Tribal Court established by the Ayala Faction to justify actions violating tribal law.  The proposed interveners purport to act to protect the interests of the Tribe and its membership.

This action is a virtual mirror image of an earlier suit Plaintiff initiated against Rabobank and others in this Court in case number 1:13-cv-00609-LJO-MJS entitled <u>Picayune Rancheria of Chukchansi Indians v. Rabobank, et al</u>. (Hereinafter, the

"Rabobank Case".) Records therein[1] show that the Lewis Faction moved to intervene there on the same grounds on which they rely in their motion to intervene in this case. The Reid Faction essentially parrots those grounds while adding pre-2012 facts to reflect its role in the history of the Tribe and this dispute.

## II. PROCEDURAL STATUS

As noted, the Complaint was filed in this action on May 30, 2013. The instant motion to intervene was filed within three weeks thereafter. Plaintiff filed an opposition and the moving party filed a reply. The motion to intervene has been referred to the undersigned Magistrate Judge for hearing, if appropriate, and for submission of a Findings and Recommendations to the District Judge pursuant to 28 U.S.C. § 636. On review the undersigned found the motion suitable for decision on the papers submitted and without oral argument (Local Rule 230(g)), and so vacated the hearing and deemed the matter submitted.

## III. APPLICABLE LAW

Intervention is governed by Federal Rule of Civil Procedure 24. The Rule is broadly construed in favor of intervention to prevent or simplify future litigation on related matters. United States v. City of Los Angeles, 288 F.3d 391, 397-398 (9th Cir. 2002) (citations omitted). It is determined primarily on "practical and equitable considerations." Id. (citing Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998)).

As applicable here, a party is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest." Id. The Court shall permit intervention if four elements are met. First, the application must be timely. League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997).

---

[1] The Court may take judicial notice of court records. Fed. R. Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

4

Second, the movant must have a significant protectable interest regarding the transaction that is the subject of the suit. Id. Next the movant must be situated so that, from a practical standpoint, disposition of the action might impair or impede his ability to protect that interest. Id. Fourth and last, the moving party's interest must be inadequately represented by the parties before the Court. Id.

Even if a party does not have a *right* to intervene, the Court may in its discretion allow permissive intervention when the party "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); see City of Los Angeles, 288 F.3d at 403.

**IV. ANALYSIS**

For the reasons discussed below, the Court finds that moving party, the Reid Faction does not meet the criteria justifying intervention as of right or permissive intervention.

    **A.**     **Intervention as of Right**

        1.     Timeliness

The timeliness issue is to be resolved by consideration of the stage of the proceedings at which intervention is sought, the reason for delay, if any, in moving to intervene, and the prejudice, if any, to other parties in allowing intervention. League of Latin Am. Citizens, 131 F.3d at 1302.

The Reid Faction's motion to intervene was filed within three weeks of the Complaint having been filed. There was no delay. No one has been prejudiced by the timing of the motion.

        2.     Significant Protectable Interest

A party is considered to have a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation. California ex rel. Lockyer v. United States, 450 F.3d 436, 441 (9th Cir. 2006).

On virtually identical facts and argument, this Court found that the Lewis Faction

had a significant protectable interest justifying its intervention in the Rabobank Case. In a separate Order to be issued forthwith, this Court finds likewise as to the Lewis Faction's right to intervene in this case.  Nevertheless, the Court concludes that the Reid Faction does not have a similar, or any, significant protectable interest in the subject matter of this suit.

Plaintiff, the Ayala Faction, has invoked this Court's jurisdiction to gain enforcement of its purported Tribal Court orders as against Defendant Banks.  The Lewis and Reid Factions both object to that effort as one designed to take control of the Tribe's funds and apply them contrary to tribal obligations to and agreements with others.  The objecting proposed interveners raise substantial questions about the validity of tactics used by the Ayala Faction to wrest control of the Tribe, justify its actions, and even initiate this litigation.  Defendant Banks reportedly have determined for their purposes that the Ayala Faction has no right, power, or authority to so act.  The Defendant Banks instead continue to deal with the Lewis Faction as the proper tribal government and representative.

Other than the Reid Faction, no one in this case claims that the Reid Faction has any direct stake in the outcome of the case as the case is defined by the Complaint and responses.  No one claims that the outcome of this litigation as it now exists will be impacted by anything that occurred before December 3, 2011.  No one claims that the Reid Faction has played any role in tribal governance at any time since December 3, 2011.  No one credibly claims that the outcome of this case will have any direct impact whatsoever on the Reid Faction.

As it exists now the case involves a dispute between the Ayala Faction, on the one hand, and the Lewis Faction and the Defendant Banks, on the other.  The Ayala Faction wants the Defendant Banks to recognize its authority; the Lewis Faction and the Defendant Banks maintain that the Ayala Faction has no such authority because that authority remains with the Lewis Faction.  If the Lewis Faction succeeds it may confirm, from a practical standpoint, the Lewis Faction's access to and control of tribal revenues

and secure for approximately 900 Lewis Faction-affiliated tribal members the benefits of tribal revenue. Regardless of which side prevails here, the Reid Faction apparently will remain disenfranchised. Judicial refutation of the Ayala Faction in this case will, at most, return affairs to the conditions that existed in 2012; it will not restore the Reid Faction to any level of control or authority over tribal affairs. Neither will resolution of the case in favor of the Ayala Faction. The Reid Faction's claim to any share of tribal authority is not before the Court in this case.

This analysis and the result here might be different if this Court had the power and authority here to determine which, if any, of the three factions should be recognized by the federal government as the "Tribe". The parties seem to agree that the Court does not have that power and it expressly does not undertake to assert it here.

### 3. Interest Potentially Impaired

The case must be such that its resolution will have an actual effect on the intervener. Arakaki v. Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003). For the reasons discussed in the immediately preceding section, the Court concludes that the outcome of this case will be of no consequence one way or another to the Reid Faction or to its claims it was improperly divested of control in December 2011. To the extent those claims have any remaining viability their pursuit is not foreclosed by the Court's ruling here, but they may not be pursued in this case.

### 4. Inadequate Representation by Existing Parties

The fourth and final qualifying criterion for intervention as of right is a finding that existing parties may not adequately represent the substantial interests of the proposed intervenor. The showing required is minimal; it is sufficient if the moving party shows that its interests "may be" inadequately represented. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538, fn. 10 (1972) (citations omitted); Arakaki, 324 F.3d at 1086.

The Reid Faction does not meet this criterion. Defining the limits of this case as above and as limited by the pleadings, the most that can be said is that the Reid Faction shares the Lewis Faction's belief that the Ayala Faction does not represent the Tribe.

To that extent, the Reid Faction's objection to the Ayala Faction will be pursued by the Lewis Faction. While obviously the Lewis Faction is not going to represent the Reid Faction's interest in restoring Reid Faction control of the Tribe, that interest and the conflicts related thereto are not before the Court in this case.

### B.  Permissive Joinder

Permissive joinder is available in the Court's discretion to anyone who timely seeks it and presents a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b). The "common question" issue is to be liberally construed. Stallworth v. Monsanto Co., 558 F.2d 257, 269 (5th Cir. 1977).

As discussed above, the unique issues raised by the Reid Faction's timely motion to intervene are not to be addressed in this case. Interjecting the Reid's Faction's much older and apparently long-dormant claim to tribal control in this case will only complicate the much more limited issues raised by the pleadings. Given the Court's apparent lack of authority to determine which of the three factions is "the Tribe", no useful purpose would be served by allowing the Reid Faction to join and assert that claim here.

### V.  CONCLUSION

For the reasons set forth above, the undersigned finds that the proposed intervener, the Reid Faction of the Picayune Rancheria of Chukchansi Indians, fails to meet the criteria for intervention as a matter of right or for permissive intervention under Federal Rule of Civil Procedure 24(a) and (b), respectively, and therefor recommends that the motion to intervene as a Defendant in this action should be denied.

These Findings and Recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the Magistrate

Judge's Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 11, 2013         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE